CHARLES F. MOEHLE, Adm'r of the Estate of Margaret M. Moehle, Deceased, *et al.*, Plaintiffs-Appellants, *v.* CHRYSLER MOTORS CORPORATION, Defendant-Appellee.

First District (4th Division)    No. 80-1929

Opinion filed September 17, 1981.

Edward J. Egan and Robert J. Weber, both of Robert J. Weber, Ltd., of Chicago, for appellants.

Cassiday, Schade & Gloor, of Chicago (William J. Furey, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Charles F. Moehle, administrator of the estate of Margaret M. Moehle, deceased, and Noma L. Meister, brought this strict product liability action to recover damages arising from an accident involving an automobile manufactured by the defendant, Chrysler Motors Corporation. Following a jury trial judgment was entered in favor of the defendant. On appeal the plaintiffs allege (1) the trial court erred in admitting evidence of compliance with a minimum Federal safety standard because the standard was not relevant to the issue of whether the product was in an unreasonably dangerous condition; and (2) the jury verdict was against the manifest weight of the evidence.

On May 20, 1973, Charles and Margaret Moehle, their daughter Ann, and Noma L. Meister were driving in Charles Moehle's three-week-old Chrysler New Yorker automobile. Charles and Ann Moehle were in the front seat. Margaret Moehle and Noma Meister were in the rear seat. Margaret Moehle and Noma Meister were sitting erect with their seat belts fastened.

While the car was traveling eastbound at 40 to 50 miles per hour on a four-lane highway, another vehicle crossed in front of them driving north-

ward. The other vehicle turned westward, suddenly swerved southward, and reentered the eastbound lanes. The left front of the Moehle car hit the right front of the other vehicle. The vehicles bounced off one another and collided again this time along the right side of the other vehicle.

Charles Moehle was thrown forward by the impact and hit the steering wheel. Ann Moehle was thrown to the floor in the front seat.

As a result of the accident, Margaret Moehle and Noma Meister were seriously injured. Each sustained the most serious injuries in the abdominal area. Moehle died from the injuries. Meister was hospitalized for many weeks.

The rear seat of the Moehle vehicle was attached to the floor of the car by two anchoring mechanisms, one on each end of the seat. Each anchoring mechanism consisted of a Z-shaped anchoring wire, one end of which was connected to the underside of the seat and the other end of which was connected to a U-shaped anchoring bracket which was connected to the floor. The U-shaped anchoring bracket consisted of two hooks each of which wrapped around in such a way as to restrain the anchoring wire. It was the plaintiffs' theory that as a result of a collision the rear seat could shift sideways from the right to the left allowing the anchoring wire to disengage from the hooks, especially if the hook were bent. Once the anchoring wire disengaged, the rear seat would no longer be restrained and could move forward. As a result of the forward movement of the rear seat, rear passengers would drop downward so that their seat belts would impact them in the soft abdominal area rather than in the bony hip area. It was the plaintiffs' contention that the anchoring mechanism was therefore in an unreasonably dangerous condition. The defendant denied these allegations contending that the anchoring wire did not disengage, that even if it did disengage the rear seat would be unable to move forward, that the anchoring wire would be less able to disengage if the hook were bent, and, that even if the wire did disengage and the seat move forward, the anchoring mechanism was not in an unreasonably dangerous condition.

Six witnesses testified in support of the plaintiffs' contention concerning the rear seat movement. Noma Meister testified that she felt the rear seat moving backward and forward. During the accident her body slid under the seat belt so that after the accident it was across her stomach and rib area just below her breast. Another witness testified that immediately after the accident he observed that the rear seat was slanted approximately three to five inches toward the front seat. According to a second witness who was at the scene immediately following the accident, the rear seat was moved forward. The right side of the rear seat was moved forward about six inches such that the witness could put his foot or knee behind Margaret Moehle and touch the floor. A rescue worker testi-

fied that when he arrived at the accident scene he noted nothing unusual about the rear passenger compartment of the Moehle vehicle, that it looked "as good as the day it was new" and that he made no observation of any movement of the rear seat cushion. He saw the Moehle vehicle parked across from his fire station more than an hour later and observed that the back seat was pulled out approximately two to three inches.

A mechanical engineer testified on the plaintiffs' behalf. Referring to photographs of the Moehle car, he testified that one hook of the right anchoring bracket was bent and pointed out shiny metal marks which he said indicated that some force had been applied to the bracket. He also pointed out scrape marks on the floor under the rear seat which he said correspond to the right anchoring wire. He said these marks indicated that the right anchoring wire came loose from the anchoring bracket, whipped along the top of the anchoring bracket, and scraped the floor leaving the marks. In his opinion the right side of the rear seat bench did not remain attached to the anchoring bracket. Rather, the rear seat moved forward some distance beyond the right bracket, pivoting about the left anchoring mechanism which was undisturbed. He also testified that at the time the car was manufactured there existed two alternate types of anchoring devices which at about the same cost would have prevented the movement of the rear seat here.

Another of the plaintiffs' experts described the phenomena of "submarining." He stated that when a seat belt is worn properly and performs properly during a crash, a person's head and arms would flex forward over the seat belt and the belt would impact around the pelvic area. When a seat belt is not worn properly or if it performs improperly, submarining can occur. That is, the person slides under the belt and the belt slides up over the pelvic area to the abdominal area. Retaining a seat bench in its position insures that there is the proper ramp angle to prevent the body from moving downward under the belt. According to the witness, Meister and Moehle suffered classic submarining injuries.

Four occurrence and two expert witnesses testified on these issues for the defense. One of the occurrence witnesses testified that he saw the rear seat in the Moehle vehicle after the accident and it looked normal. An Illinois State Police Officer testified that immediately following the accident he observed the rear seat cushion and did not notice any displacement. Another Illinois State Police Officer who also arrived at the scene immediately following the accident testified that the rear seat cushion looked normal.

A rescue worker testified that during the rescue the rear seat cushion and seat back were in the normal and correct positions and there was a uniform distance from the leading edge of the rear cushion to the rear of the front seat back across the entire passenger compartment. After the

accident he returned to the empty vehicle to look under and around the seats for personal belongings. At that time the seat cushion was still a uniform distance from the rear of the front seat back and there was no displacement of the rear seat cushion.

A professor of anatomy with a background in automotive medicine, forensic science, highway safety research and automotive safety engineering who had published extensively in the area of passenger restraint systems and had participated in over 3500 field investigations involving automobile crashes testified as an expert for the defense. According to the witness there is no correlation between the stability of the rear seat cushion and any propensity toward the incidence or occurrence of submarining in high speed collisions. He testified that the injuries sustained by Noma Meister and Margaret Moehle were not the result of submarining. According to this witness, Moehle was not wearing her seat belt properly and her injuries were consistent with hyperflection over the seat belt.

A consulting engineer in the field of automotive engineering also testified as an expert for the defense. According to this witness the Federal standard in effect at the time the car was manufactured required that seat anchoring mechanisms withstand longitudinal forces of 20 times the weight of the seat (20G). He testified that the standard was complied with by Chrysler and that in fact Chrysler tested to 24 times the weight of the seat. According to this witness crash situations involving speeds of 30 to 35 miles per hour will generate forces of 30 times the weight of the seat in the back seat.

In this witness' opinion the anchoring wire never became disengaged from the anchoring bracket in the Moehle vehicle. He testified that the anchoring bracket has a vertical trap so the anchoring wire could not become disengaged and that in fact it was less likely to become disengaged when the anchoring bracket hook was in a bent condition. Further, the witness testified that the rear seat cushion in the Moehle vehicle was restrained not only by the anchoring mechanism but also by the shape of the undercarriage. According to the witness the seat could not move forward without deforming the undercarriage of the vehicle. In his opinion the rear seat of the Moehle vehicle did not move forward since the undercarriage of the car was not deformed. He also testified that even the complete absence of an anchoring mechanism on the right side of the rear seat would not affect the vertical position of the occupants of the rear seat.

The first issue raised in this appeal is whether the trial court erred in admitting evidence of the defendant's compliance with a Federal standard which required that rear seat anchoring mechanisms withstand longitudinal forces of 20 times the weight of the seat.

The issue of the admissibility of Federal standards in strict liability cases was addressed by our supreme court in *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534. The *Rucker* plaintiff alleged that a railroad car was in an unreasonably dangerous condition because of the absence of a so-called "head shield." The railroad car was manufactured at a time when Federal regulations did not require a head shield. The design of the car therefore met Federal requirements as they then existed. The court held that evidence of compliance with the Federal regulation was relevant to the issue of whether the absence of the head shield was an unreasonably dangerous condition. However, the court rejected the defendant's argument that evidence of compliance with Federal standards negates liability and held instead that the finder of fact may conclude that a condition is unreasonably dangerous notwithstanding conformity to Federal standards.

■■ In order to prevail the plaintiffs here had to establish that an unreasonably dangerous condition existed in the defendant's product. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) A product is unreasonably dangerous if it fails to perform in a manner reasonably to be expected in light of its nature and intended function. (*Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401; Illinois Pattern Jury Instructions, Civil, No. 400.06 (1977 supp.); Illinois Pattern Jury Instructions, Civil, No. 400.06, Comment at 26 (1977 supp.).) The danger must be "beyond that which would be contemplated by the ordinary consumer * * * with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts §402A, Comment (i) (1965); *Becker v. Aquaslide 'N' Dive Corp.* (1975), 35 Ill. App. 3d 479, 341 N.E.2d 369.

■■ We conclude that under *Rucker* the fact that a Federal standard required anchoring mechanisms to withstand longitudinal forces of 20 times the weight of the rear seat is relevant to the issue of whether the product was in an unreasonably dangerous condition. That is, the standard is some evidence that the rear seat anchoring mechanism performed in a manner reasonably to be expected in light of its nature and function and of what would be contemplated by the ordinary consumer with the ordinary knowledge common to the community as to the characteristics of rear seat anchoring mechanisms.

The plaintiffs contend that the Federal standard is irrelevant to the facts of this particular case because here the force of impact was greater than and from a different direction than that described in the Federal standard. This argument however, does not bear on the issue of the relevancy of the Federal standard but rather concerns the weight to be given the evidence. The difference between the facts of the instant case and the specifications set forth in the standard were matters to be considered by

the jury in determining the weight to be given the evidence that there was a Federal standard and that it had been complied with. The plaintiffs were entitled to and did in fact attempt to establish that notwithstanding compliance with the Federal standard the defendant's product was in an unreasonably dangerous condition. For example, they cross-examined the defendant's expert witness at length concerning the Federal standard and they brought out testimony that the conditions described in the Federal standard were markedly different from those surrounding the accident.

■■ Neither are we persuaded by the plaintiffs' argument that we should modify or limit *Rucker*. The supreme court's recent declaration of the law in *Rucker* is binding, and we are without authority to overrule or modify that law. *Aetna Insurance Co. v. Janson* (1978), 60 Ill. App. 3d 957, 377 N.E.2d 296.

The plaintiffs also argue that the jury's verdict is against the manifest weight of the evidence. A jury's verdict will not be set aside on appeal if there is sufficient credible evidence to support it (*McClure v. Suter* (1978), 63 Ill. App. 3d 378, 379 N.E.2d 1376), unless it appears that the jury was influenced by passion, prejudice or corruption (*A. H. Sollinger Construction Co. v. Illinois Building Authority* (1972), 5 Ill. App. 3d 554, 283 N.E.2d 508). The determination of where the truth lies in conflicting testimony and the determination of the weight, if any, which should be accorded the witness' testimony are functions solely for the finder of fact. *Pfister v. West* (1964), 53 Ill. App. 2d 305, 203 N.E.2d 35; and see *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.

Here, the evidence was conflicting on many of the issues involved in the cause. For example, according to the defendant's proof the rear seat anchoring wire did not disengage, even if it did disengage the rear seat did not move, even if the seat had moved, such movement would not have resulted in submarining and that in any event the anchoring mechanism was not in an unreasonably dangerous condition. The plaintiffs' proof contradicted the defendant's proof on these issues, but the jury resolved the conflicts in the evidence in favor of the defendant and we will not substitute our judgment for that of the jury.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

ROMITI, P. J., and JOHNSON, J., concur.