ZAVIE ARTIS, Plaintiff-Appellant, *v.* FIBRE METAL PRODUCTS, Defendant-Appellee.

First District (4th Division)   No. 81—2095

Opinion filed March 17, 1983.—Rehearing denied June 28, 1983.

Richard S. Fleisher, of Karlin and Fleisher, Ltd., of Chicago (David A. Novoselsky, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Shaun McParland, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Zavie Artis, filed a one-count products liability action in the circuit court of Cook County against the defendant, Fibre-Metal Products Co., seeking to recover damages for a spinal injury that he suffered while wearing a safety helmet manufactured by defendant. Following the trial court's granting defendant's motion for summary judgment and subsequent refusal to vacate the order, plaintiff appealed.

Plaintiff now argues that the trial court improperly granted summary judgment for defendant because (1) the trial judge improperly focused on the use of the helmet intended by the defendant manufacturer rather than on the performance expected of the product by the general public; (2) the trial judge improperly based his judgment on the "relative credibility" of the expert opinions submitted in support of and in opposition to the motion for summary judgment; and (3) the trial judge improperly failed to consider the evidence of alternative design that plaintiff submitted.

We affirm.

FACTS

Plaintiff was an employee of the Chicago Transit Authority. On March 31, 1976, he was assigned to work beneath an elevated train platform. Plaintiff wore a safety helmet manufactured by defendant. A railroad tie weighing about 50 pounds fell a distance of 14 feet and struck plaintiff on the side of the head. The blow forced plaintiff's head down, causing a flexion injury to his neck and leaving him paralyzed. Plaintiff's attending physician determined that plaintiff had suffered traumatic quadriplegia as a result of a spontaneously reduced subluxation of the cervical spine at the C5-6 level; plaintiff's paralysis was not the result of an injury to his head or skull.

On August 29, 1977, plaintiff filed a products liability suit against defendant. Plaintiff's one-count complaint alleged that the helmet, called a "Supergard," was defective because it lacked "energy absorption material for noncoronal impact"; that defendant failed to warn plaintiff of the defective condition; and that the condition of the helmet was the proximate cause of plaintiff's injuries.

The helmet plaintiff wore conformed to the standard promulgated by the American National Standards Institute for industrial safety helmets. The ANSI standard prescribes the amount of force that a

helmet must withstand from a blow to the crown; there are no standards dealing with a noncoronal impact such as that suffered by plaintiff in this case. Plaintiff's expert witness, Dr. George Snively, stated in his deposition testimony that he knew of no helmet designed with the intent of protecting the neck; the function of an industrial safety helmet is to protect the wearer's head and brain.

On July 23, 1980, defendant moved for summary judgment, claiming that the helmet was not defective and therefore not unreasonably dangerous because it performed in the manner to be expected in light of its nature and intended function, which was to protect the wearer's skull; that no safety helmet in existence could have protected plaintiff's spine from injury under the circumstances of his accident; that the accident that occurred was not reasonably foreseeable and defendant was accordingly not responsible for protecting plaintiff against a blow of such magnitude; and that the danger of being injured if struck by a 50-pound railroad tie falling 14 feet is open and obvious and defendant therefore had no duty to warn plaintiff about it.

In support of its motion defendant submitted depositions of witnesses to the accident, the affidavit of one of plaintiff's physicians, and the affidavit of defendant's expert witness, Dr. James McElhany, a professor of biomedical engineering. Dr. McElhany's opinion was that the helmet worn by plaintiff had performed in the manner reasonably to be expected in light of its nature and intended function in that it "shed the blow of the railroad tie, changing what could have been a fatal impact into a glancing one, thereby successfully protecting plaintiff's brain and skull from the impact." Dr. McElhany stated further that no existing helmet could have protected against the injury that plaintiff sustained to his neck no matter what its energy-managing properties were.

Plaintiff's response to defendant's motion for summary judgment included the deposition of Dr. Snively, in which he stated that had there been "a better handling of the impact energy" by the helmet, plaintiff might have suffered a lesser injury. Dr. Snively testified that a helmet meeting a standard developed in New Zealand would have absorbed more energy from the noncoronal blow. Dr. Snively agreed with Dr. McElhany that the intended function of an industrial helmet is to protect against brain injury; that he knew of no helmet, including the New Zealand helmet, that was designed to protect the wearer's neck; and that he did not know how much reduction in the force of the blow would have been necessary to prevent plaintiff's injury.

After hearing oral arguments, the trial judge issued an order on February 27, 1981, entering summary judgment in favor of defendant

and against plaintiff. Finding that the intended function of a safety helmet is to protect against head injuries, that the helmet in question had protected plaintiff from brain injury, and that no helmet is made with the intent of protecting the neck, the court held as a matter of law that the helmet was not unreasonably dangerous and that there was no duty on the part of defendant to warn plaintiff against the possibility of spinal injuries.

Plaintiff filed a "motion to vacate and for rehearing," claiming the trial court's order was erroneous as a matter of law. Plaintiff also filed several exhibits in support of his motion, including reports on experimental head protective devices and a transcript of testimony by Dr. McElhany in a New Jersey case involving a football helmet. Defendant argued in response that the order was supported by the record and that the new materials submitted could not be considered on a motion to reconsider because they had been available prior to the entry of the February 27, 1981, order. The motion for reconsideration was denied. Plaintiff appealed.

OPINION

When a plaintiff appeals a trial court's order of summary judgment for the defendant, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1981, ch. 110, par. 57(3).) If the documents to be considered show that there is a genuine issue as to any material fact, summary judgment should not be granted. (*Gelsumino v. E.W. Bliss Co.* (1973), 10 Ill. App. 3d 604, 295 N.E.2d 110; *American National Bank & Trust Co. v. Lembessis* (1969), 116 Ill. App. 2d 5, 253 N.E.2d 126.) We believe the issues raised by plaintiff in this appeal as to the nature and intended function of a safety helmet, the weighing of the expert opinions, and the consideration of related matters are really subissues underlying the question of whether any genuine issue of fact has been raised.

In ruling on a motion for summary judgment, the trial judge must construe the pleadings, depositions, and affidavits in the light most favorable to the nonmoving party. (*Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 324 N.E.2d 444.) If fair-minded persons could draw different conclusions from the evidence, the issues should be submitted to a jury to determine what conclusion seems most reasonable. (*Silberstein v. Peoria Town & Country Bowl, Inc.* (1970), 120 Ill. App. 2d 290, 257 N.E.2d 12.) Conversely, when the ev-

idence indicates that no material issue of fact has been raised, the moving party is entitled to judgment as a matter of law. See, *e.g.*, *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368; *Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 388 N.E.2d 964; *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 382 N.E.2d 36.

■ In this case, we think the trial judge properly decided that none of the claims advanced by plaintiff stated a cause of action against defendant. We also agree that the new material submitted by plaintiff with his motion to vacate the summary judgment order should not have been considered in view of the fact that the material had been available prior to the filing of the motion and the subsequent issuance of the order. Established principles of products liability law compel us to conclude that none of plaintiff's arguments serves to raise a genuine issue of fact.

To recover damages from a manufacturer on a products liability theory an injured plaintiff must prove that his injury "resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182, 188.) In *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401, the supreme court explained that unreasonably dangerous (not reasonably safe) products are those that "fail to perform in the manner reasonably to be expected in light of their nature and intended function." 42 Ill. 2d 339, 342, 247 N.E.2d 401, 403.

A manufacturer is not required to insure against all foreseeable accidents involving its product. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368; *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1; *Curry v. Louis Allis Co.* (1981), 100 Ill. App. 3d 910, 427 N.E.2d 254.) A defect in the product must be the proximate cause of the plaintiff's injury (*Suvada v. White Motor Co.; Barr v. Rivinius, Inc.* (1978), 58 Ill. App. 3d 121, 373 N.E.2d 1063), and a legal inference of defectiveness may not be drawn merely from evidence that an injury occurred. (*Curry v. Louis Allis Co.; Huff v. Elmhurst-Chicago Stone Co.* (1981), 94 Ill. App. 3d 1091, 419 N.E.2d 561.) "Strict products liability is not a doctrine of absolute liability entitling any person harmed while using a product to recover from any member of the production and distribution group. It does not make a manufacturer *** an insurer of the consumer's safety." *Mullen v. General Motors Corp.* (1975), 32 Ill. App. 3d 122, 129, 336 N.E.2d 338, 344.

■ Applying all of these principles to the case at bar, we find inescapable the conclusion that plaintiff has established no entitlement

to a recovery from defendant. He has produced no evidence that the helmet was defective, much less that such defect was the proximate cause of his injury. To allege, as plaintiff does, that the protection expected by the consumer, however unreasonable, determines the standard of foreseeable use is irrational; application of such a standard would make the manufacturer of a protective device worn by an injured person an absolute insurer of his product, a result that has been rejected repeatedly by Illinois courts. "Foreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur." (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 12-13, 310 N.E.2d 1, 5.) "[L]iability of a manufacturer properly encompasses *** only those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable that it may be used. Any other approach to the problem results in making the manufacturer and those in the chain of product distribution virtual insurers of the product, a position rejected by [the Illinois Supreme Court] in *Suvada*." 57 Ill. 2d 7, 11, 310 N.E.2d 1, 4.

■ Both of the expert witnesses in this case testified that the intended function of a safety helmet is to protect the wearer against head injury. Dr. McElhany testified that the helmet plaintiff wore had performed that function, since plaintiff's injury was to the neck, not the head. In deciding whether to grant summary judgment the trial judge is required by statute to consider the pleadings, depositions, and affidavits filed in support of and in opposition to the motion. (Ill. Rev. Stat. 1981, ch. 110, par. 57(3).) If these documents fail to show any genuine issue of material fact, summary judgment should be granted. Since both of the experts in this case indicated that the nature and intended function of a safety helmet is to protect the head, the trial judge properly found that fair minded persons would agree that the helmet in question was not shown to be defective.

■ Thus it is clear that there is no merit in plaintiff's argument that the trial judge improperly based his judgment on the "relative credibility" of the expert witnesses, since he was required by statute to do so. We see no merit in plaintiff's argument that the trial judge focused on an improper standard of intended use, since the standard the trial judge applied was that established by the documents the statute directed him to consider. Plaintiff cannot establish a legally cognizable defect merely by indicating a preference for a helmet that would provide neck protection. Not only does such a helmet not exist, even if it did, "the availability of an alternative design does not translate into a legal duty in products liability." *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 212, 384 N.E.2d 368, 372.

"[I]t is the manufacturer's duty to design a product so that it will be reasonably safe for its intended use and for any reasonably foreseeable use; conversely, the injured plaintiff to prevail must show that the quality of the particular product is insufficient and that the duty of care on the part of the manufacturer required it to design something safer for the user." (*Flaugher v. Sears, Roebuck & Co.* (1978), 61 Ill. App. 3d 671, 675, 378 N.E.2d 337, 340.) For all of the reasons discussed above, we are compelled to agree with the trial judge's finding that plaintiff failed to show that the quality of the helmet manufactured by defendant was insufficient. Accordingly, we hold that summary judgment for defendant was entered properly, and we affirm the judgment of the trial court.

Affirmed.

ROMITI, P.J., and JIGANTI, J., concur.