DAVID A. MILLER, Plaintiff-Appellant, v. DOROTHY E. DVORNIK *et al.*, Defendants (Performance Center, Limited, Defendant-Appellee).

First District (1st Division)   No. 85—2268

Opinion filed September 22, 1986.—Modified on denial of rehearing December 15, 1986.

Michael J. McArdle, of Chicago, for appellant.

John F. Pacocha, of Chicago, for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, David A. Miller, appeals from an order which dismissed counts III and IV of his second amended complaint which sought damages for personal injuries incurred when his Yamaha RX 50K-B motorcycle, manufactured by defendant, Yamaha Motor Corporation, U.S.A. (Yamaha) and sold by defendant, Performance Center, Limited (Performance), was allegedly struck by an automobile driven by defendant, Dorothy E. Dvornik (Dvornik). Count III sounded in strict liability in tort against Performance, and count IV sounded in negligence against Performance. Counts I and II, directed against Dvornik and Yamaha, respectively, remain pending below in the trial court, and are not involved in this appeal. On appeal, plaintiff contends that: (1) the trial court erred in ruling as a matter of law that the motorcycle purchased by him was not unreasonably dangerous when operated without safety crash bars; (2) the trial court erred in ruling as a matter of law that Performance did not breach any duty when it sold the motorcycle to plaintiff without safety crash bars, without recommending safety crash bars, and without warning of the dangers of operating the motorcycle without safety crash bars; and (3) Performance's motion to dismiss pursuant to sections 2—615 and 2—621 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—621) fails to state sufficient grounds to obtain dismissal. For the reasons stated below, we affirm the decision of the circuit court.

The record sets forth the following: On June 14, 1984, plaintiff, age 19, purchased from Performance a 1983 Yamaha RX 50K-B motorcycle, unequipped with safety crash bars, an optional feature. Shortly thereafter, on June 29, 1984, plaintiff was involved in an automobile collision with Dvornik at the intersection of Kedzie and 99th Street in Evergreen Park. As a result of the collision, plaintiff was thrown into the air and onto the pavement, incurring serious injuries to his legs.

Subsequently, on October 22, 1984, plaintiff brought a single-count cause of action in negligence against Dvornik. Two months later, in January 1985, plaintiff was granted leave to amend his complaint in order to add Yamaha and Performance as defendants and also to add counts II and III, which alleged strict liability in tort against Yamaha and Performance, respectively. In each of the two new counts, plaintiff claimed that the motorcycle was unreasonably dangerous for use by the general public on the grounds that: (1) it was not designed to incorporate crash bars to protect the legs of the user; (2) crash bars were not designed, manufactured, offered, or recommended to consumers as a safety option; and (3) the motorcycle was not equipped

with a warning regarding its inherently dangerous condition when operated without crash bars.

In response, Performance moved to dismiss count III pursuant to section 2—621(b) of the Code, which permits dismissal of a strict liability in tort claim against a retailer once the plaintiff has filed a complaint against the manufacturer and the manufacturer has answered or otherwise pleaded. However, pursuant to section 2—621(c), dismissal is not permitted if any of the following exceptions apply to the retailer:

> "(c) A court shall not enter a dismissal order relative to any certifying defendant or defendants other than the manufacturer even though full compliance with subsection (a) of this Section has been made where the plaintiff can show one or more of the following:
>
> (1) that the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage; or
>
> (2) that the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or
>
> (3) that the defendant created the defect in the product which caused the injury, death or damage.''

In its motion to dismiss and supporting affidavit, Performance alleged that it had neither designed nor manufactured the motorcycle; it had had no control over the design or manufacture of the motorcycle; and it never has had any knowledge of any defects in the motorcycle. As a result, the court granted Performance's section 2—621 motion to dismiss, and allowed plaintiff 28 days within which to amend his complaint.

Subsequently, on May 13, 1985, plaintiff filed his second amended complaint, amending count III to allege that Performance had actual knowledge of the motorcycle's defects and conditions which rendered the motorcycle unreasonably dangerous; and adding count IV, which alleged that Performance was careless and negligent in one or more of the following respects:

> "(a) Sold a Yamaha RX 50K-B, Serial Number 23 H 010533 to the Plaintiff without crashbars to protect the legs of the Plaintiff in the event of side collision, roll or fall, when it knew or should have known that operation of that motorcycle without crashbars was unreasonably dangerous.
>
> (b) Sold and delivered Yamaha RX 50K-B, Serial Number 23

H 010533 to the Plaintiff, when it knew or should have known that the Plaintiff had no experience in the use of motorcycles, and that the operation of said motorcycle by the Plaintiff posed an unreasonably dangerous threat to the Plaintiff's well-being.

(c) Failed to warn the Plaintiff of the risks and hazards in the operation of a motorcycle, when it knew that Plaintiff was unaware of said risks and hazards."

Performance then moved to dismiss amended count III pursuant to section 2—621 and to dismiss count IV pursuant to section 2—615 of the Code. With respect to count III, Performance again stated that it had no actual knowledge of any defect in the motorcycle. Regarding count IV, Performance claimed that, as a matter of law, it had breached no duty to plaintiff because: (1) there are no Illinois cases which hold that motorcycles without crash bars are unreasonably dangerous, thus, there is no duty to warn; (2) retailers are under no duty to sell products which are incapable of causing injury; and (3) there is no duty to warn of patent risks or hazards.

On July 11, 1985, the trial court granted Performance's motion to dismiss counts III and IV and allowed plaintiff 28 days within which to add a breach-of-warranty count against Performance. However, plaintiff decided not to add the additional count. Thus, on July 17, 1985, the court entered an amended order, dismissing counts III and IV without leave to amend. Plaintiff's timely appeal followed.

Plaintiff first contends that the trial court erred in ruling that, as a matter of law, the motorcycle he had purchased from Performance was not unreasonably dangerous. Specifically, plaintiff asserts that: (1) because the motorcycle was not equipped with safety crash bars and because Performance had failed to offer or to recommend them to plaintiff, the motorcycle was unreasonably dangerous; (2) any member of the distributive chain may be held liable under the theory of products liability, regardless of fault; and (3) Performance's failure to warn plaintiff about the dangers of operating the motorcycle without crash bars created a question of fact as to whether the motorcycle was unreasonably dangerous. We reserve discussion of the third assertion for our analysis of the negligence count on the ground that it presupposes a duty to warn.

Initially, we note that on appeal of dismissal for failure to state a cause of action, all well-pleaded facts within the complaint must be regarded as admitted and true, and all reasonable inferences which can be fairly drawn from the facts alleged must also be considered as true. (*Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 391 N.E.2d 479.) We first address plaintiff's assertion that the trial court

erred in determining that the motorcycle was not unreasonably dangerous as a matter of law. It is widely held that a product is legally characterized as such if it is dangerous to an extent beyond that which would be contemplated by the ordinary person with ordinary knowledge common to the community. (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 412 N.E.2d 959; *Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 388 N.E.2d 964.) Because the focus in determining whether a product is unreasonably dangerous is on the product itself, not on available safety devices, the pivotal question is whether the product in its present state, without installation of optional safety devices, is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function. *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368; *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401; *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 450 N.E.2d 756; *Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 388 N.E.2d 964.

■ In the case at bar, plaintiff alleged that he was an inexperienced 19-year-old at the time he purchased the motorcycle and could not be expected to have been cognizant of the dangers of riding a motorcycle without crash bars. In today's society, motorcycles are a common means of transportation for persons who are plaintiff's age and, in our view, any competent 19-year-old person can be expected to know the hazards of riding a motorcycle, including the fact that if a motorcycle is hit from the side by an automobile, either the driver of the motorcycle will be thrown or the motorcycle will topple over. If the driver is thrown, it can reasonably be assumed that crash bars would provide little, if any, protection to the driver. On the other hand, if the motorcycle topples over, crash bars may provide protection to the driver's legs. There is nothing circumspect about a motorcycle rider's vulnerability to injury in the event of a collision. The risks are patent. It is well settled that injuries are not compensable if they are caused by inherent propensities of a product which are obvious to all who come into contact with them. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368; *Walker v. Maxwell City, Inc.* (1983), 117 Ill. App. 3d 571, 453 N.E.2d 917.) Further, it is important to note that plaintiff did not allege that the motorcycle malfunctioned in any way so as to have caused the accident, nor did he allege that the installation of crash bars would have prevented his injuries. These allegations are essential to plaintiff's claim that the motorcycle was unreasonably dangerous. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368; *Dunham v. Vaughn & Bushnell Manufacturing Co.*

(1969), 42 Ill. 2d 339, 247 N.E.2d 401; *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 450 N.E.2d 756; *Fuller v. Fend-All Co.* (1970), 70 Ill. App. 3d 634, 388 N.E.2d 964.) Without them, the complaint is substantially insufficient as a matter of law. Accordingly, we conclude that the trial court properly determined that the motorcycle was not unreasonably dangerous as a matter of law.

■ Plaintiff further contends that any member in the distributive chain may be held liable under the theory of strict products liability regardless of whether it is at fault. While this may be an accurate statement of the law, liability is predicated on a finding that the product is unreasonably dangerous. Our conclusion that the motorcycle was not unreasonably dangerous obviates the need to further address plaintiff's contention.

■ ■ Next, plaintiff argues that Performance's failure to issue warnings to him regarding operation of the motorcycle without safety crash bars or to recommend to him that he purchase the crash bars constituted a breach of Performance's implied duty of care. At the outset, we note that plaintiff bases this argument on a faulty premise: that the trial court found that Performance had a duty to warn plaintiff about the need to install safety crash bars. Our review of the transcript indicates that this was not the court's finding. Instead, the trial court concurred with plaintiff's allegation that Performance, as a retailer, had a duty of due care. However, the court concluded that this duty was not breached by a failure to warn because the motorcycle was not unreasonably dangerous.

Generally, a duty to warn exists where there is unequal knowledge, actual or constructive, and defendant, possessed of such knowledge, knows or should know that harm might or could occur if no warning is given. (*Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 388 N.E.2d 964.) However, there is no duty to warn against obvious risks. *Baylie v. Swift & Co.* (1975), 27 Ill. App. 3d 1031, 327 N.E.2d 438.

In the present case, as previously discussed, the inherent risks of riding a motorcycle are known and obvious to the community at large. While the availability of crash bars may have been within the knowledge of Performance and not within plaintiff's knowledge at the time of purchase, this does not preclude plaintiff, a competent 19-year-old, from inquiring as to the availability of possible safety devices with respect to obvious risks. Accordingly, we conclude that the trial court properly determined that Performance's failure to recommend the safety crash bars did not constitute a breach of its implied duty of care. Further, because plaintiff's factual allegations which provide the

basis for the failure-to-warn issue are undisputed by Performance, we find that the issue was properly resolved as a question of law. See *Village of Rosemont v. Chicago Title & Trust Co.* (1982), 111 Ill. App. 3d 610, 444 N.E.2d 598.

■■ Next, plaintiff contends that defendant's motion to dismiss counts III and IV of his second amended complaint, predicated upon sections 2—621 and 2—615 of the Code, respectively, stated insufficient grounds to warrant dismissal. With respect to dismissal of count III, plaintiff argues that the trial court improperly failed to address section 2—621 in its ruling.

As indicated, section 2—621 instructs a court to dismiss a certifying defendant (Performance) in a strict liability in tort action once the manufacturer (Yamaha) has answered or otherwise pleaded, provided that the retailer: (1) did not exercise significant control over the design or manufacture of the product or warn the manufacturer of defects in the product; (2) did not have actual knowledge of the defect; or (3) did not create the product defect. Plaintiff concedes that the first of the above exceptions to dismissal under section 2—621 does not apply. However, he does claim that Performance had actual knowledge of the defect (absence of crash bars) and created the defect by failing to warn plaintiff about the absence of the bars.

Initially, we disagree with plaintiff's allegation that the trial court failed to address section 2—621 in its ruling. Our reading of the record indicates that the court clearly found that no defect existed in the motorcycle upon which to base application of the exceptions. As indicated, the section 2—621(c) exceptions to dismissal presuppose that a defect in the product exists. Once a finding has been made that a defect does not exist, the exceptions are inapplicable and Performance, as retailer, is properly dismissed under section 2—621(b).

It is well settled that products are defective when they fail to perform in the manner reasonably expected in light of their nature and intended function. (*Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401; *Walker v. Maxwell City, Inc.* (1983), 117 Ill. App. 3d 571, 453 N.E.2d 917.) The legal inference of defectiveness cannot be drawn from the mere occurrence of an injury. (*Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 450 N.E.2d 756.) In the present case, there was no allegation that the motorcycle failed to perform as reasonably expected. Accordingly, we find that the factual allegations support the trial court's decision that no defect existed and, thus, the section 2—621(c) exceptions to dismissal were inapplicable as to Performance.

■■ ■ With respect to the section 2—615 portion of Perform-

ance's motion to dismiss which addressed count IV (negligence), plaintiff claims that because the alleged facts demonstrate a possibility of recovery, the count was improperly dismissed. Specifically, count IV alleged the following instances of negligence by Performance: (1) failure to add crash bars; and (2) failure to warn plaintiff of the risks involved in operating the motorcycle without crash bars. In its motion to dismiss count IV, Performance claimed that, because it had not breached any duty to plaintiff, count IV was insufficient in law.

It is well recognized that the necessary elements to establish a cause of action for negligence are: existence of a legal duty owed to plaintiff by defendant; breach of that duty; a resulting compensable injury to plaintiff; and the breach must have been the proximate cause of the plaintiff's injury. (*Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 433 N.E.2d 1350.) Further, the existence of a duty is a question of law. *Securities Fund Services, Inc. v. American National Bank & Trust Co.* (N.D. Ill. 1982), 542 F. Supp. 323.

In the present case, the trial court concluded, as a matter of law, that Performance had no legal duty to either add safety crash bars to the motorcycle or to warn plaintiff of the hazards of riding a motorcycle without crash bars. As previously discussed, we concur with the trial court's determination that neither duty existed from Performance to plaintiff. Therefore, absent the legal duty claimed to have been breached, we concur with the trial court's decision to dismiss count IV as insufficient in law pursuant to section 2—615 of the Code.

For the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

QUINLAN, P.J., and O'CONNOR, J., concur.