JAMES KUTZLER, Plaintiff-Appellant, v. AMF HARLEY-DAVIDSON, Defendant-Appellee.

First District (1st Division)   No. 1—88—0489

Opinion filed February 5, 1990.

Philip F. Maher & Associates, of Chicago (Philip F. Maher, Stephen E. McLean, and Michael W. Rathsack, of counsel), for appellant.

Phelan, Pope & John, Ltd., of Chicago (Roseann Oliver, Jeffrey M. Rubin, and Edward D. Rickert, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, James Kutzler, appeals from the dismissal of his first amended complaint pursuant to the section 2—615 motion (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) filed by defendant, AMF Harley-Davidson, a motorcycle manufacturer. Plaintiff sought damages for injuries sustained when an automobile sideswiped him while he was riding his motorcycle. Count I of plaintiff's complaint alleged that the motorcycle was unreasonably dangerous because: (1) it had not been designed, manufactured, assembled, sold or distributed with "crash bars, leg protection structures or other devices which would afford

protection to the legs of the operator of said motorcycle"; and (2) it was designed, manufactured, assembled, sold and distributed "with 'Fat Bob' gas tanks which forced the legs of the operator into a position of exposure" to accidents. Count II alleged defendant's negligence predicated on the same acts set forth in count I. In reliance on *Miller v. Dvornik* (1986), 149 Ill. App. 3d 883, 501 N.E.2d 160, the trial court held that motorcycles designed with extra-wide gas tanks and not equipped with crash bars were not unreasonably dangerous as a matter of law and dismissed the cause of action. On appeal, plaintiff contends that: (1) the trial court erred in dismissing his complaint because the absence of crash bars created an unreasonably defective and dangerous condition for which the defendant might be found liable by a jury; and (2) the extra-wide design of the gas tank caused plaintiff's legs to protrude out from the motorcycle to an unusual extent and, thus, substantially increased the risk of injury and constituted an unreasonably dangerous and defective condition. For the following reasons, we affirm the judgment of the trial court.

The record indicates that prior to July 23, 1981, plaintiff purchased a secondhand 1979 Harley Davidson Sportster Fat Bob motorcycle from a private individual in "as is" condition. On July 23, 1981, while plaintiff was traveling in a northerly direction on Route 131 in Lake County, Illinois, an unidentified automobile, traveling in a southerly direction, crossed the center line of Route 131 and sideswiped plaintiff's left leg. Immediately following the incident, plaintiff maintained his motorcycle in an upright position and steered it off the roadway and onto the right-hand shoulder. As a result of the incident, plaintiff suffered multiple fractures and severe injuries to his left leg.

On May 13, 1983, plaintiff filed a two-count complaint against defendant, alleging that the motorcycle was unreasonably dangerous because it lacked crash bars and that defendant had been negligent in designing, manufacturing, assembling and selling the motorcycle without crash bars. In reliance on *Miller v. Dvornik* (1986), 149 Ill. App. 3d 883, 501 N.E.2d 160, defendant moved for judgment on the pleadings. *Miller* held that motorcycles without crash bars were not unreasonably dangerous as a matter of law. The trial court granted plaintiff leave to file a first amended complaint, and, on May 13, 1987, plaintiff filed his first amended complaint, adding allegations that the "Fat Bob" gas tank rendered the motorcycle unreasonably dangerous and that defendant was negligent in manufacturing, assembling, selling and distributing the motorcycle with a "Fat Bob" gas tank.

In response, pursuant to section 2—615, defendant moved to dismiss and, in the alternative, for judgment on the pleadings. The trial

court granted defendant's motion, but allowed plaintiff 30 days to file a motion to reconsider.[1] Plaintiff's motion to reconsider was denied and this timely appeal followed.

■■ Preliminarily, this court is cognizant of the legal principles that because plaintiff's appeal is from an order dismissing his complaint, all well-pleaded facts are taken as true and must be interpreted in the light most favorable to plaintiff to determine if they are sufficient to set forth a cause of action upon which relief may be granted. *J.J. Harrington & Co. v. Timmerman* (1977), 50 Ill. App. 3d 404, 365 N.E.2d 721.

As previously stated, the trial court in the present case relied solely on *Miller v. Dvornik* (1986), 149 Ill. App. 3d 883, 501 N.E.2d 160, in reaching its decision and held that a motorcycle designed with an extra-wide gas tank and not equipped with crash bars was not unreasonably dangerous as a matter of law. In doing so, the trial court extended the *Miller* court's holding to include the extra-wide gas tank design by analogy. In *Miller*, plaintiff, age 19, sued a motorcycle dealer, manufacturer and driver of an automobile for damages for injuries sustained when an automobile struck his motorcycle, which was not equipped with crash bars, causing him to be thrown from the cycle. The counts against the dealer, alleging strict liability in tort and negligence, were dismissed and plaintiff appealed. The counts against the manufacturer and driver remained pending below.

■■ In affirming the trial court's determination that motorcycles without crash bars were not unreasonably dangerous as a matter of law, the *Miller* court relied on the well-established common law definition that an unreasonably dangerous product was one which was "dangerous to an extent beyond that which would be contemplated by the ordinary person with ordinary knowledge common to the community." (149 Ill. App. 3d at 888.) The court further noted that there was "nothing circumspect about a motorcycle rider's vulnerability to injury in the event of a collision" (149 Ill. App. 3d at 888), and that injuries which are caused by obvious propensities in a product are not compensable. In reaching its decision, the *Miller* court focused on the product itself, not available safety devices, and stated that the pivotal question is whether the product itself fails to perform as reasonably

---

[1]The trial court also granted defendant's motion to strike portions of plaintiff's response and supplemental response to defendant's motion for judgment on the pleadings on the grounds that plaintiff attempted to put matters before the court which were *de hors* the pleadings. Plaintiff has abandoned this issue on appeal by failing to address it in his briefs. See *McCottrell v. Benson* (1961), 32 Ill. App. 2d 367, 178 N.E.2d 144.

expected in light of its nature and intended function. 149 Ill. App. 3d at 888.

■ In attempting to distinguish *Miller* from the case at bar, plaintiff argues that: (1) *Miller* dealt only with a dealer's duty, not a manufacturer's duty; (2) *Miller* is narrowly confined to its facts, where plaintiff had been thrown from the cycle and crash bars would not have made any difference with respect to his injuries; (3) unlike in the present case, Miller had failed to allege that the crash bars would have prevented his injury, rendering the complaint substantially insufficient as a matter of law; and (4) unlike the absence of crash bars, the extra-wide gas tank was a latent defect. In our view, none of these distinctions renders *Miller* noncontrolling of the issues at bar.

First, the fact that *Miller* addressed a complaint against a dealer and the present case is directed toward a manufacturer does not alter the applicable principles of law as to what renders a product unreasonably dangerous. Second, the *Miller* court did not confine its holding to its fact situation. The recent case, *Bossert v. Tate* (1989), 183 Ill. App. 3d 868, 539 N.E.2d 729, exemplifies the scope of the *Miller* holding. In *Bossert*, plaintiff was struck in the left side by an automobile and incurred injuries to his lower left leg. There was no indication in *Bossert* that plaintiff had been thrown off his bike as the plaintiff in *Miller* had been. The *Bossert* court found *Miller* dispositive of the identical crash bar issue against a manufacturer, predicated on a fact situation very similar to the one at bar. Third, regarding allegations in the complaint, although the *Miller* court noted that plaintiff's failure to allege that crash bars would have prevented his injury rendered the complaint insufficient, that fact was not dispositive of the issue. Therefore, it does not constitute a legally significant fact for purposes of analogy to the present case. We further note that, in his reply brief, plaintiff extolls the safety functions of crash guards. While this discussion is informative, it is not legally persuasive because it incorrectly places the emphasis on safety devices rather than on the product itself. *Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 388 N.E.2d 964.

■ With respect to the extra-wide gas tank, plaintiff contends that *Miller* is inapplicable because the gas tank design defect is latent rather than open and obvious. This argument has no basis in fact. A defect is latent when it constitutes a hidden danger such as the misplacement of a vehicle's fuel containment system (*Ryan v. Blakey* (1979), 71 Ill. App. 3d 339, 389 N.E.2d 604) or an improperly mounted gasoline tank in an automobile (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460), both of which cause an automobile to burst into

flame upon impact with another vehicle. In both *Ryan* and *Buehler*, the danger from the design defect was clearly beyond that which would be contemplated by the ordinary person with ordinary knowledge common to the community. See *Miller v. Dvornik* (1986), 149 Ill. App. 3d 883, 501 N.E.2d 160.

■ By contrast, the width of the gas tank in the present case was readily apparent, and the fact that a motorcycle rider's legs, when positioned over the tank, would protrude outward would be equally apparent as soon as the rider sat down on the cycle. Plaintiff apparently wants this court to believe that but for the alleged extra width of the gas tank, the automobile would not have sideswiped his leg. We find this argument unpersuasive. First, based on the facts in the pleadings, this is mere speculation. Second, the risk of being sideswiped is open and obvious to any motorcycle rider, regardless of the width of the gas tank. Third, products liability does not make the manufacturer an insurer of all foreseeable accidents which involve its product. In this regard, a manufacturer is not under a duty in strict liability to design a product which is totally incapable of injuring those who might foreseeably use the product. *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368.

■ In addition to *Miller v. Dvornik*, we find that *Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 388 N.E.2d 964, also supports defendant's position. In *Fuller*, plaintiff, a machinist, was wearing safety glasses manufactured by defendant when a piece of metal flew into his right eye and caused blindness. Plaintiff claimed that the glasses were unreasonably dangerous because they lacked safety shields. The trial court entered summary judgment in favor of defendant. On appeal, the *Fuller* court applied the consumer expectation test and concluded that because glasses without side shields cannot reasonably be expected to protect against particle side entry, they have not failed to perform in a manner reasonably to be expected in light of their nature and function. Thus, the absence of side shields cannot be considered an unreasonably dangerous condition. (70 Ill. App. 3d at 638.) Similarly, because a motorcycle with an extra-wide gas tank and not equipped with crash bars cannot reasonably be expected to offer protection to the rider from sideswipes, the motorcycle has not failed to perform in the manner reasonably to be expected in light of its nature and function. Therefore, we find that a motorcycle with an extra-wide gas tank and without crash bars cannot be considered unreasonably dangerous.

■ Furthermore, we find plaintiff's reliance on *Camacho v. Honda Motor Co.* (Colo. 1987), 741 P.2d 1240, misplaced. Plaintiff dis-

cusses *Camacho* and compares *Miller* to *Camacho* as if *Camacho* were controlling precedent in Illinois. Not only is it not controlling precedent, it is not even persuasive precedent. Colorado adheres to the crashworthy doctrine while Illinois follows the consumer expectation test, which is predicated on the common law definition of "unreasonably dangerous" previously discussed, *i.e.*, a product which is dangerous to an extent beyond that which would be contemplated by the ordinary person with ordinary knowledge common to the community. (*Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 388 N.E.2d 964.) The *Camacho* dissent expressly recognizes this distinction. *Camacho*, 741 P.2d at 1250 (Vollack, J., dissenting).

■ In light of the extensive body of Illinois law which addresses the issues at bar, we find it unnecessary to address those cases outside our jurisdiction relied upon by plaintiff. We further note that plaintiff's contention that the buyer's knowledge is not at issue in the pleading stage is not supported by Illinois law, which follows the consumer expectation test, of which the consumer's knowledge is an essential element. Finally, with respect to plaintiff's contention that defendant had a duty to inform plaintiff of the availability of crash guards, we find that the fact that plaintiff purchased the cycle secondhand without defendant's knowledge renders this contention groundless.

For the aforementioned reasons, we affirm the judgment of the trial court.

Affirmed.

MANNING, J., concurs.

PRESIDING JUSTICE BUCKLEY, dissenting:
I dissent because I believe the majority has misstated Illinois products liability law applicable to design defect cases and has confused the concept of crashworthiness with the consumer contemplation test.

The majority incorrectly states that an "extensive" body of Illinois law addresses the issues in the case at bar and requires a finding that the challenged design defects here are not unreasonably dangerous as a matter of law. The majority fails to recognize that the crucial issues presented by this appeal are (1) whether Illinois has adopted the consumer contemplation test as the exclusive test in design defect cases to preclude a plaintiff's recovery for personal injury resulting from any obvious design defect and (2) whether the adoption of the

crashworthy doctrine by the Illinois Supreme Court in automobile collision cases extends to motorcycle collision cases. As demonstrated below, Illinois case law is anything but "established" as to the permissible proof to show an unreasonably dangerous product in design defect cases and Illinois courts have not addressed the applicability of the crashworthy doctrine to motorcycle collision cases.

The "consumer contemplation test" has been subject to wide criticism by courts and commentators for its inadequacy as a test for evaluating whether a product is defective in design defect cases.[2] One shortcoming of the test is that a victim could never recover for harm suffered as a result of a design hazard that was open or obvious, resulting in products not being found defective where they could easily have been designed safer without great expense or effect on the benefits or functions to be served by the product. (See W. Keeton, Prosser & Keeton on Torts, §99 (5th ed. 1984).) This, as well as other deficiencies, prompted many jurisdictions to adopt in design defect cases an alternative approach to determining whether a product is unreasonably dangerous which allows a product to be found defective where the benefits of the challenged design do not outweigh the risk of danger inherent in the design. (See *Barker v. Lull Engineering Co.* (1978), 20 Cal. 3d 413, 573 P.2d 443, 143 Cal. Rptr. 225; *Caterpillar Tractor Co. v. Beck* (Alaska 1979), 593 P.2d 871; *Chown v. USM Corp.* (Iowa 1980), 297 N.W.2d 218; *Knitz v. Minster Machine Co.* (1982), 69 Ohio St. 2d 460, 432 N.E.2d 814; *Brady v. Melody Homes Manufacturer* (Ariz. App. 1979), 121 Ariz. 253, 589 P.2d 896; *Turner v. General Motors Corp.* (Tex. 1979), 584 S.W.2d 844; *Suter v. San Angelo Foundry & Machine Co.* (1979), 81 N.J. 150, 406 A.2d 140; *Wilson v. Piper Aircraft Corp.* (1978), 282 Or. 61, 577 P.2d 1322.) Under the various forms of balancing tests adopted by these jurisdictions, numerous factors are considered in determining whether a design renders the product unreasonably dangerous, such as the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from the alternative design. See *Barker*, 20 Cal. 3d at 431, 573 P.2d at 455.

The Illinois Supreme Court first applied the consumer contemplation test to determine if a product contained an actionable defect in

---

[2]The consumer contemplation test, with its origins in warranty law, is rooted in contract law, which explains its emphasis on consumers' expectations. See W. Keeton, Prosser & Keeton on Torts, §99 (5th ed. 1984).

*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 211-12, 384 N.E.2d 368, 372, where the court found that an exit sign post without a "break-away" design was not defective, as there were no allegations that the post subjected motorists to any unexpected risks. The supreme court, however, has not limited the method of proof to show an unreasonably dangerous product to the consumer contemplation test set forth in section 402A of the Restatement (Second) of Torts (Restatement (Second) of Torts §402A, comment *i* (1965)), but has recognized evidence of feasible alternative design, not in the context of consumer expectations, but as a separate method of showing the unreasonably dangerous nature of a design.

In *Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 216, 412 N.E.2d 959, 962, the supreme court did not limit the method of proof to consumers' expectations when it found that the second way the unreasonable danger was proven was by "introducing evidence that the [product] could have been designed to prevent a foreseeable harm without hindering its function or increasing its price." (*Palmer*, 82 Ill. 2d at 219-20, 412 N.E.2d at 963-64.) Similarly, other supreme court cases have permitted proof not relevant to consumers' expectations to prove an unreasonably dangerous design, suggesting the adoption of an alternative method of proof. In *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 164, 390 N.E.2d 859, 864, where plaintiff alleged a forage blower was unreasonably dangerous because it lacked a device to secure a power takeoff assembly, the supreme court found plaintiff could prove the unreasonably dangerous nature of a defect in the design by introducing evidence of feasible alternative design. In *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 437-38, 396 N.E.2d 534, 536-37, where the plaintiff argued that a manufacturer's compliance with Federal standards should be admissible as evidence under a risk-benefit balancing test in the determination of whether the absence of a protective shield device rendered a railroad tank car unreasonably dangerous, the court, without discussing the ordinary consumer's expectations, found such evidence to be admissible as relevant to the issue of whether a product's design is unreasonably dangerous. See also *Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 385 N.E.2d 690; *Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 443 N.E.2d 575.

Courts and commentators have interpreted this supreme court case law as implicitly adopting an alternative test to the consumer contemplation test which is similar to the "risk-benefit" test or as expressly pretermitting the issue of feasible alternative design in design defect cases. See *Seward v. Griffin* (1983), 116 Ill. App. 3d 749, 766,

452 N.E.2d 558, 571 ("Clearly, evidence of alternative design feasibility is relevant to the issue [of the unreasonably dangerous nature of the defect in design.] In light of the *Kerns* decision, and until the Illinois Supreme Court determines otherwise, we believe the rule of law in Illinois is that evidence of alternative design feasibility is relevant and admissible in a design defect case \*\*\*."); J. Mirza, Illinois Personal Injury §700:56—57 (1989); Huntley, *The Concept of Defect in Illinois Products Liability Litigation*, 71 Ill. B.J. 22, 28-34 (1982).

The above supreme court case law illustrates that, in reaching its conclusion that plaintiff may not recover as a matter of law here, the majority has relied on two incorrect principles as "established" Illinois law in design defect cases: first, that injuries are not compensable if they are caused by obvious propensities in a product and, second, that available safety devices are irrelevant to the "unreasonably dangerous" determination. Not only is this "established" law contrary to the above-cited supreme court case law, the supreme court cases cited in the case relied upon by the majority, *Miller v. Dvornik* (1986), 149 Ill. App. 3d 883, 501 N.E.2d 160, do not lend support for the majority's conclusion. *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, and *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401, cited in *Miller*, predate the court's recognition of the alternative method of proving a defective product in design defect cases through feasible alternative design proof. Moreover, outside their application of the consumer contemplation test, these cases did not establish any general products liability principles relating to obvious dangers[3] or alternative design proof.[4]

Recognizing that Illinois permits an alternative method of proving an "unreasonably dangerous" design and that the open and obvious nature of a design does not preclude recovery in a design defect case,

---

[3]*Hunt*'s discussion as to product liability principles regarding the obvious inherent properties of a product refers to the principle in duty to warn cases that a manufacturer does not have a duty to warn of obvious dangers of *nondefective* products. (*Hunt*, 74 Ill. 2d at 211, 384 N.E.2d at 372 citing *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 467, 343 N.E.2d 465, 471 (duty to warn is not required where the product is not defectively designed and where the possibility of injury results from a common propensity of the product which is open and obvious); see also *Martin v. Harrington & Richardson, Inc.* (1984), 743 F.2d 1200 (applying Illinois law); *Huff v. Elmhurst-Chicago Stone Co.* (1981), 94 Ill. App. 3d 1091, 419 N.E.2d 561.) The reasoning of the general rule regarding the obviousness of the risk in duty to warn cases is that the purpose of warning is to apprise persons of a danger of which he has no knowledge so that he may take protective measures.

[4]The majority cites *Miller*, which in turn cites *Hunt* and *Dunham* as establishing that the focus in the unreasonably dangerous determination "is on the product itself,

it is evident that the majority has relied on a faulty basis for finding the challenged designs not to be unreasonably dangerous as a matter of law. The question of whether the challenged designs of the motorcycle were unreasonably dangerous through consideration of feasible alternative design was a question properly to be decided by the trier of fact.

Nonetheless, apart from the question of whether the product was unreasonably dangerous—which involves the breach of duty element in product liability actions (*Phillips v. United States Waco Corp.* (1987), 163 Ill. App. 3d 410, 417, 516 N.E.2d 670)—plaintiff's complaint raises an issue of first impression for Illinois involving a motorcycle manufacturer's legal duty in products liability law. Because the gravamen of plaintiff's action is that defects in the design of the motorcycle, though not the cause of the accident, caused or enhanced his injuries, a question of law is raised as to whether Illinois will extend a manufacturer's duty to produce reasonably safe products to situations where the product did not cause the accident, but enhanced the injuries after a collision. This inquiry involves the concept of "crashworthiness." The majority, in stating that Illinois does not adhere to the crashworthy doctrine but instead follows the consumer contemplation test, fails to recognize that (1) the crashworthy doctrine involves the legal duty element in strict liability actions, whereas the consumer contemplation test relates to the breach of duty element through the evaluation of a product's defectiveness, and (2) Illinois has not rejected the crashworthy doctrine.[5]

"Crashworthiness" has been defined as the "protection that a passenger motor vehicle offers its passengers against personal injury or death as a result of a motor vehicle accident." (*Jackson v. Volkswagen of America* (E.D.N.C. June 4, 1986), No. 84—857—Civ—5 (unpublished memorandum opinion and order).) Under the "crashworthy doctrine," which has been adopted in various contexts by most

---

*not on available safety devices." Hunt* and *Dunham*, however, do not establish any general product liability principle excluding consideration of available safety devices. *Hunt* merely stated that the availability of an alternative design *alone* does not translate into a legally cognizable defect. While it is true that the focus in strict products liability law is on the product, consideration of available safety devices does not deviate from that focus. Where alternative feasible design is in issue, the question is whether the absence of safety devices makes the product unreasonably dangerous. See J. Mirza, Illinois Personal Injury §700:56—57 (1989).

[5]It should be noted that although the majority mentions the crashworthy doctrine, the majority's finding that the motorcycle was not unreasonably dangerous as a matter of law because of the open and obvious nature of the challenged designs rendered it unnecessary to address the crashworthy issue.

jurisdictions,[6] the manufacturer's products liability may extend in motor vehicle cases to situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury over that which would have occurred absent the defective design. (*E.g.*, *Tafoya v. Sears Roebuck & Co.* (10th Cir. 1989), 884 F.2d 1330; *Jackson*, No. 84—857—Civ—5; *Robbins v. Yamaha Motor Corp.* (1983), 98 F.R.D. 36; *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460; *Larsen v. General Motors Corp.* (8th Cir. 1968), 391 F.2d 495.) The doctrine recognizes that the foreseeable and intended use of a motor vehicle encompasses the inevitability of collisions and requires the manufacturer to design a vehicle reasonably safe for those foreseeable risks. (*Miller v. Todd* (Ind. 1988), 518 N.E.2d 1124.) It does not, however, place the manufacturer in the position of insurer, but merely extends a manufacturer's duties while invoking the same requirements of liability as in other products liability actions. (See *Miller*, 518 N.E.2d at 1125-26; *Jackson*, No. 84—857—CIV—5; *Larsen*, 391 F.2d 495.) Thus, application of the doctrine in Illinois would still require plaintiff to prove that his injury resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the defendant's control. See *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182, 188.

The Illinois Supreme Court adopted the crashworthy doctrine in *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 61-62, 374 N.E.2d 460, 464-65, when it defined a manufacturer's duty in automobile cases "to use reasonable care in the design and manufacture of its product, bearing in mind that the intended and actual use of automobiles results in collisions." (See also *Seward v. Griffin* (1983), 116 Ill. App. 3d 749, 766, 452 N.E.2d 558, 568.) While the doctrine was originally applied to an automobile collision case (*Larsen*, 391 F.2d 495), many jurisdictions have extended its application to other motor vehicles, including motorcycles. (*Jackson*, No. 84—857—CIV—5; *Tafoya*, 884 F.2d 1330; *Camacho v. Honda Motor Co.* (Colo. 1987), 741 P.2d 1240, 1243; *Frazier v. Harley Davidson Motor Co.* (W.D. Pa. 1985), 109 F.R.D. 293; *McInnis v. A.M.F., Inc.* (1st Cir. 1985), 765 F.2d 240; *O'Donnell v. City of Casper* (Wyo. 1985), 696 P.2d 1278; *Robbins v. Yamaha Motor Corp.* (M.D. Pa. 1983), 98 F.R.D. 36; *Stueve v. American Honda Mo-*

---

[6]As noted in *Jackson v. Volkswagen of America* (E.D.N.C. June 4, 1986), No. 84—857—CIV—5 (unpublished memorandum opinion and order), as of 1986, 38 of the 39 jurisdictions that have considered the question have adopted the doctrine of crashworthiness.

Robert H. Aronson, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Gael O'Brien, and Patrick J. Finley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Following a bench trial before Judge James M. Schreier on August 25, 1988, the circuit court found defendant guilty of one count of possession with intent to deliver between 10 and 15 grams of a substance containing heroin in violation of section 401(b) of the Illinois Controlled

*tors Co.* (D. Kan. 1978), 457 F. Supp. 740; *Nicolodi v. Harley-Davidson Motor Co.* (Fla. App. 1979), 370 So. 2d 68.) Illinois has not had occasion to address whether the doctrine extends to motorcycle collision cases.

As the resolution of this first-impression question is necessary to the determination of whether plaintiff has stated a cause of action here, I would hold that the crashworthy doctrine adopted in Illinois to automobile collision cases extends to motorcycle collision cases. After reviewing cases from other jurisdictions which have addressed the issue, I find persuasive the reasoning articulated by the Colorado Supreme Court in *Camacho v. Honda Motor Co.* (Colo. 1987), 741 P.2d 1240:

> "Honda argues *** that motorcycles are inherently dangerous motor vehicles that cannot be made perfectly crashworthy and, therefore, that motorcycle manufacturers should be free of liability for injuries not actually caused by a defect in the design or manufacture of the motorcycle. We find no principled basis to conclude that liability for failure to provide reasonable, cost-acceptable safety features to reduce the severity of injuries suffered in inevitable accidents should be imposed upon automobile manufacturers but not upon motorcycle manufacturers. The use of motorcycles for transportation over roadways is just as foreseeable as the use of automobiles for such purpose. The crashworthiness doctrine does not require a manufacturer to provide absolute safety, but merely to provide some measure of reasonable, cost-effective safety in the foreseeable use of the product. *** In view of the important goal of encouraging maximum development of reasonable, cost-efficient safety features in the manufacture of all products, the argument that motorcycle manufacturers should be exempt from liability under the crashworthiness doctrine because serious injury to users of that product is foreseeable must be rejected." *Camacho*, 741 P.2d at 1243-44.

To summarize, I would reverse the circuit court's dismissal of plaintiff's action because the question of whether the challenged designs rendered the product unreasonably dangerous, in light of a motorcycle manufacturer's duty to design a motorcycle free from *unreasonable* risks of enhanced injuries in the event of collisions, should have been a question for the trier of fact here. Consistent with Illinois case law, plaintiff should have been given the opportunity to prove that the product was unreasonably dangerous through evidence of the availability of a feasible alternative design which would not hinder the

motorcycle's function or utility. In making the "unreasonably danger-ous" determination, the trier of fact should have been permitted to consider such factors as the gravity of the danger posed by the chal-lenged design, the mechanical and economical feasibility of a safer al-ternative design, and the adverse consequences of the alternative de-sign to the motorcycle's inherent and open nature.

