GEORGE JARKE, Plaintiff-Appellant, v. JACKSON PRODUCTS, Defendant-Appellee.

First District (2nd Division)   No. 1—93—0860

Opinion filed February 1, 1994.—Modified on denial of rehearing March 16, 1994.

Robert D. Kolar & Associates, Ltd., of Chicago (Robert D. Kolar and Thomas M. Sheehan, of counsel), for appellant.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Michael R. Levinson, Daniel M. Blouin, and William G. Skalitzky, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

On January 31, 1988, plaintiff George Jarke, who was employed as a mechanic for a tool and die manufacturer, was removing a metal plate called a "keeper" from a furnace car. According to his estimate, he had performed this task approximately 10 times before. The keeper was welded to the wheelbase of the furnace car, and in order to remove it, plaintiff used an arc welder to melt the old weld bead. The only vantage point from which he could cut the plate was beneath the car while sitting in a shallow pit, a position which afforded him very little headroom; and in order to fit under the car, he was forced to turn his head at an angle away from the spot he was welding. He guessed that while in that position, his head was tilted

at an angle of between 45 and 90 degrees, leaning toward his right shoulder.

While he was cutting the keeper off the car, hot sparks and bits of molten metal, called slag or spatter, flew from the area being cut. He was wearing a welding mask designed, manufactured and sold by defendant Jackson Products, one of the purposes of which was to shield his face from the sparks. One particle of hot slag allegedly rolled down the mask to its side rim and fell into plaintiff's ear canal and perforated his ear drum, causing him intense pain. After two failed attempts to use a skin graft to repair the ear drum, a specialist in Florida was able to rebuild his auditory organs. Despite this surgery, plaintiff sustained permanent hearing loss as a result of the injury.

Plaintiff filed suit in the circuit court alleging that defendant was strictly liable for his injuries under the tort theory of products liability. He maintained that the welding mask was unreasonably dangerous because it offered no protection to his ears; that defendant failed to warn of its deficiencies in this regard; and that by its design, which he maintained channelled molten metal toward the ear, it actually served to increase the likelihood of a piece of slag falling into the user's ear when welding in the reasonably foreseeable way in which plaintiff was working. He also pleaded another count against defendant sounding in negligence, but he appears to have abandoned that action on appeal. See 134 Ill. 2d R. 341(e)(7); *Kellman v. University of Chicago* (1988), 166 Ill. App. 3d 137, 519 N.E.2d 708.

Defendant moved for summary judgment, maintaining that the fact that the mask afforded no protection to the wearer's ears was an "open and obvious" property of the mask, a risk against which it was under no duty to warn or to guard. In support of its motion it attached plaintiff's deposition and the affidavit of an expert who attested that the fact that the welding mask did not protect the ears was clear and comprehensible to anyone who would use it. He opined that it would be plain to all that spatter would run down the face of the mask and slide over its edge and that the unpredictable flight path of the spatter would be a particularly obvious risk when the mask was used in an area as confined as that in which plaintiff welded.

In response to defendant's motion, plaintiff offered the affidavit of his own expert, who stated that the mask at issue was unreasonably dangerous in that it left the ear exposed and formed a canal which increased the risk that the hot slag would run into the ear. He also stated that the average welder would not appreciate that the mask did not protect the user's ear. He added that the mask produced by

defendant did not comply with the industry-accepted standards promulgated by the American National Standards Institute, which state that a welding helmet should be designed so as to protect the eyes, face, ears and neck of a welder against radiation and spatter. Plaintiff also appended to his response the deposition of defendant's quality control manager who testified that the design met all applicable industry standards. Finally, plaintiff offered photographs of himself wearing the mask alleged to be defective, the close-ups of which showed that the mask, when in the down position, did not cover plaintiff's ear, terminating near the hairline of his sideburns. The trial court granted defendant's motion for summary judgment, finding that the lack of ear protection was open and obvious; thus, the mask posed no unreasonable danger to its user. The trial judge did not expressly address plaintiff's alternate theory of liability that the mask's design affirmatively contributed to his injuries. Plaintiff filed a timely notice of appeal.

The sole issue in this appeal is whether the circuit court erred when it determined, pursuant to defendant's motion for summary judgment, that, as a matter of law, defendant was not liable to plaintiff for the injuries he suffered. Summary judgment motions permit the trial court to determine whether any genuine issue of material fact exists in an action and, if not, to provide an expedient means for its resolution. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) When deciding the motion, the trial court, after considering "the pleadings, depositions, and admissions on file, together with the affidavits, if any" (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c)), should construe all such evidence strictly against the movant. (*Reed v. Bascon* (1988), 124 Ill. 2d 386, 393, 530 N.E.2d 417, 420; *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) Our supreme court has warned that while summary judgments are to be encouraged in the interest of prompt disposition of lawsuits, they are a drastic measure. (*Bascon*, 124 Ill. 2d at 393, 530 N.E.2d at 420; *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) Consequently, trial courts should grant summary judgments only where the movant's right to judgment is so clear as to be free from doubt. (*Bascon*, 124 Ill. 2d at 393, 530 N.E.2d at 420; *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) Since the trial court's passing on a motion for summary judgment makes a determination as a matter of law, it is entitled to no deference and this court reviews its grant of summary judgment *de novo*. *Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497.

Plaintiff maintains that the circuit court erred when it granted summary judgment against him on his claims arising from an alleged defect in defendant's product. To warrant recovery under the

theory of product liability, our supreme court, following the approach advanced in section 402A of the Restatement (Second) of Torts (Restatement (Second) of Torts § 402A (1965)), has held that a plaintiff must establish three elements: (1) the injury he suffered proximately resulted from a "condition" of a product; (2) the injurious condition was unreasonably dangerous; (3) and the condition existed when the product left the control of the defendant. *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 111, 454 N.E.2d 197, 200; *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 210, 384 N.E.2d 368, 372; see also *Walker v. Maxwell City, Inc.* (1983), 117 Ill. App. 3d 571, 575, 453 N.E.2d 917, 921.

Generally, a product may be found to be unreasonably dangerous either because of a design or manufacturing defect or because an intrinsic property of the product poses a threat to the safety of its user. (*Lamkin v. Towner* (1990), 138 Ill. 2d 510, 563 N.E.2d 449.) For the latter condition to be actionable, the threat posed by the inherent property of an otherwise nondefective product must not be so conspicuous that its risk would be immediately appreciated by the average consumer. *Hunt*, 74 Ill. 2d at 211, 384 N.E.2d at 372 ("Injuries are not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product").

In its motion for summary judgment, defendant claimed that since it was "open and obvious" that the welding mask did not protect the ears of its wearer, plaintiff could not establish that he was entitled to recover under products liability doctrine. The circuit court agreed. It found that in the case before it the risk of injury posed by the product was apparent to all; thus, the manufacturer of that product could not be found liable for an injury arising from that risk. The court relied on our supreme court's decision in *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465.

In *Genaust*, the plaintiff, while installing an antenna on the roof of the home of one of the defendants, suffered severe injuries when electrical current arced from overhead, uninsulated power lines through the antenna and struck the plaintiff. Among the many counts alleged in his complaint, the plaintiff claimed that the maker of the antenna and the defendant for whom it was being installed were strictly liable to him for his injuries. He contended that the antenna left the defendants' control in an unreasonably dangerous condition because they did not adequately warn that it posed an increased risk of shock when brought in close proximity to bare power lines.

The supreme court affirmed the circuit court's dismissal of those

counts on the pleadings. In explaining its holding, the court first stated that the existence and extent of a duty to warn, like any other duty, is a question of law for the court to decide. The court admitted that in some instances a duty to warn may exist and its breach may render unreasonably dangerous a nondefectively designed or manufactured product. But this duty does not attach where an injury results from an inherent propensity of the product which would be commonly appreciated by an average consumer. In other words, the court held that knowledge of a risk of injury from a product will be chargeable to a products liability plaintiff where the product's potential to cause injury was "open and obvious."

The rationale of the open and obvious doctrine can best be understood by considering what function a warning serves. The obligation to warn arises only when a manufacturer knows or should know that injury may result if no warning is given, and he, by his superior knowledge, is bound to apprise another of the potential risk, and thereby arm him with the ability to guard against it. (*McColgan v. Environmental Control Systems, Inc.* (1991), 212 Ill. App. 3d 696, 700, 571 N.E.2d 815, 818.) "However, when a danger is obvious and generally appreciated, nothing of value is gained by a warning and none is required." *McColgan*, 212 Ill. App. 3d at 701, 571 N.E.2d at 818.

An example of a proper application of the open and obvious risk doctrine can be seen in *Smith v. American Motors Sales Corp.* (1991), 215 Ill. App. 3d 951, 576 N.E.2d 146. There the plaintiff complained that the defendant's product, a Jeep CJ-7, was sold in an unreasonably dangerous condition because its design allowed him to rest his foot on the vehicle's running board, which was outside the protection of the passenger compartment of the vehicle. While driving with his left foot on the running board, he was struck by another auto. He alleged that the injuries he sustained to his leg and foot in that accident were exacerbated because he was able to place his foot on the running board.

The appellate court affirmed the trial court's grant of summary judgment in favor of the defendant-manufacturer. The court narrowed the issue to be simply whether the fact that the vehicle could be driven with a bare leg outside of its cab "constituted an open and obvious dangerous condition." (*Smith*, 215 Ill. App. 3d at 955, 576 N.E.2d at 149.) It answered this question in the affirmative, concluding that since the risk of a substantially more severe injury from vehicular impact was an unmistakable potential consequence of placing one's foot outside the protective shell of the cab, the defendant had no duty to warn a driver of the Jeep that its running board

should not be used as a footrest while the vehicle was being driven. Therefore, the product did not contain an unreasonably dangerous condition as a matter of law and summary judgment was proper.

■ In the instant case, recognition of the fact that the welding mask provided no protection to its wearer's ear was unavoidable. In fact, the photographs which plaintiff included as exhibits to his response to defendant's motion for summary judgment and which show many perspectives of plaintiff wearing the mask alleged to be defective show that the sides of the mask terminate well before the opening of the ear. It is reasonable to assume that the average consumer of the product would appreciate that the mask affords no cover or protection to its user's ears, regardless of the function he was performing or the position he was in while wearing the mask. Accordingly, the circuit court was correct when it held that, as a matter of law, defendant was under no obligation to forewarn the user of the mask that it gave no protection to the ears.

We next consider whether the court properly found that, given the open and obvious nature of this condition, defendant did not sell an unreasonably dangerous product merely because its mask did not guard against the potential of hot welding slag entering the ear of a user. Plaintiff alleged that the addition of ear protection would be easily accomplished and it would increase the production cost of the mask by an insubstantial amount. Thus, he concludes, defendant was obligated to incorporate the safer design.

It has been consistently held that the law imposes no obligation on a manufacturer to render its products absolutely incapable of inflicting injury on its purchaser. (*E.g.*, *Hunt*, 74 Ill. 2d at 211, 384 N.E.2d at 372.) Instead, the key consideration is whether the harmful potential of the product in the state in which it is used was known or was made known to its user. For instance, in *Miller v. Dvornik* (1986), 149 Ill. App. 3d 883, 501 N.E.2d 160, the court held that since the strong possibility of being thrown from a motorcycle without crash bars was an open and obvious propensity of the product, it could not be deemed to be in an unreasonably dangerous condition merely because it lacked those safety devices. The court made this determination without regard to the fact that the addition of crash bars, which would substantially reduce the risk of flying off the cycle, could be easily and economically accomplished. The court held that the only pertinent inquiry is whether the product is unreasonably dangerous in the state in which it is used. It found it irrelevant to this analysis that the product could have been made safer.

In *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 450 N.E.2d 756, the plaintiff, who was injured while wearing the

defendant's safety helmet, claimed that its manufacturer had placed into the stream of commerce a product which contained an unreasonably dangerous condition. The plaintiff suffered injuries to his spine when he was struck on the side of his head by a 50-pound railroad tie. Among other complaints regarding the product, he maintained that the helmet was defective because it did not incorporate "energy absorption material for noncoronal impact" which, he contended, would have lessened the severity of the injury to his spine. The court disagreed, holding that a plaintiff cannot establish the liability of a manufacturer simply by asserting that an alternative design is preferable to the one employed. As the *Artis* court recounted, " 'the availability of an alternative design does not translate into a legal duty in products liability.' " *Artis*, 115 Ill. App. 3d at 233, 450 N.E.2d at 760, quoting *Hunt*, 74 Ill. 2d at 212, 384 N.E.2d at 372; accord *Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 638, 388 N.E.2d 964, 967 ("In determining whether a product is unreasonably dangerous, the focus should be placed on the product itself and not the availability of any additional safety devices. [Citations.] The crucial question is not whether a product could have been made safer, but rather whether the product in its present state is [unreasonably dangerous]. [Citation]").

■ Here, plaintiff predicated part of his case against defendant on the fact that it did not incorporate a design which would have prevented his injury. At this late date, however, it is beyond argument that the law of products liability imposes no obligation to use a design which a plaintiff contends is preferable; the circuit court, therefore, was correct when it granted summary judgment in favor of defendant on this aspect of plaintiff's cause of action.

Nevertheless, we cannot affirm its judgment because there exists a final element of plaintiff's case against defendant. In addition to the contentions already discussed, the complaint also alleged that, as designed, the mask actually funneled hot welding slag toward the ear canal of a welder whose head was tilted at an angle approximately 90 degrees to the ground. According to plaintiff, the channelling effect of the outer ridge of the mask is a design defect which constitutes an unreasonably dangerous condition.

Under the "consumer-contemplation" test set forth in section 402A of the Restatement, apparently adopted for Illinois use by our supreme court in *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 342, 247 N.E.2d 401, 403, and which test is the most prevalent one followed by our courts in these cases, a product will be considered defective and therefore actionable when it "fail[s] to perform in the manner reasonably to be expected in light

of [its] nature and intended function."[1] The question of whether a product is defectively designed, thereby making it unreasonably dangerous, is one of fact which should normally be determined by a jury. *Sparacino v. Andover Controls Corp.* (1992), 227 Ill. App. 3d 980, 985, 592 N.E.2d 431, 434; *Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 155, 507 N.E.2d 1213, 1226.

In the case at bar, it does not appear that the court actually considered whether the design of the product was defective in that it affirmatively caused injury to plaintiff. Instead, the trial judge addressed only whether the product was defective for failing to prevent his injuries. The effect of the circuit court's judgment against plaintiff, however, was as though it found the product's design nondefective as a matter of law.

■ After our *de novo* review of the record, we are unable to adopt this implicit finding as our own. Plaintiff proffered the affidavit of an expert in the field of welding mask design who attested that the design used in the mask at issue increased the potential that molten welding material could enter the ear canal by acting as a funnel for such material, an averment which went unchallenged in the trial court. This fact is not only material, but is essential to the question of defendant's liability.

The instant issue is similar to the one presented in *Eberle v. Brenner* (1985), 131 Ill. App. 3d 394, 475 N.E.2d 639, where, in a personal injury action based on, *inter alia*, a theory of strict products liability, this court held that summary judgment in favor of the defendant manufacturer and other defendants was inappropriate. The *Eberle* court found that an uncontroverted allegation in the complaint which asserted that a design defect in a spray gun caused the plaintiff's injuries, standing alone, sufficiently raised genuine issues of material facts to be tried, thus preventing summary judgment.

On appeal, as it did in the trial court, defendant does not refute plaintiff's allegation of defective design, but rather contends, once again, that the fact that its mask left the ear unprotected was an open and obvious property of the product. Therefore, it reasons,

---

[1] Our supreme court has recently supplemented this area of law by adding Professor Prosser's "danger/utility" or "risk/benefit" analysis to the tests which may be used to determine a manufacturer's liability. (See *Lamkin v. Towner* (1990), 138 Ill. 2d 510, 528-29, 563 N.E.2d 449, 457.) Under the danger/utility test, a plaintiff establishes only that the design of a product proximately caused his injuries; it then becomes incumbent on the defendant to show that, on balance, the design's benefits outweigh the potential harm which may result from it. See generally W. Keeton, Prosser & Keeton on Torts § 99, at 698 (5th ed. 1984).

plaintiff, who knew or should have known of this risk, should have taken precautions against that potential other than depending completely upon the helmet.

However, this argument misses the point of the complaint. Besides alleging that the failure to warn rendered the product unreasonably dangerous, he also averred in paragraph 7(d) of count I that the design itself affirmatively caused the injury, not just that it offered no protection against it. While it would be eminently foreseeable to the normal consumer that defendant's welding mask would not protect his or her ear, we cannot agree that as a matter of law, the average individual would immediately comprehend that when used as it was here, the mask's design would actually better enable the welding slag to fall into the ear. Since this presents a triable issue of fact, the trial court erred in granting defendant's motion for summary judgment as to the third aspect of count I of plaintiff's complaint. See *Collins v. Sunnyside Corp.* (1986), 146 Ill. App. 3d 78, 81, 496 N.E.2d 1155, 1157 (in products liability action against a manufacturer of acetone, the court reversed summary judgment because it found, among other unresolved factual issues, that "whether the dangers of using acetone were generally appreciated or obvious to plaintiff" was not squarely answered by the record); *Fuller*, 70 Ill. App. 3d at 639, 388 N.E.2d at 968 (reversing summary judgment in favor of defendant in a products liability action in part because whether the plaintiff truly appreciated the risk posed by the product was not above dispute).

Since our conclusion with respect to the merits of count I is contrary to the effect of the trial court's judgment in this case, we must reverse its judgment in favor of defendant on the theory of liability contained in count I of plaintiff's complaint, which alleges that the mask affirmatively caused his injury, and remand the action for further proceedings consistent with the views expressed herein.

Reversed and remanded.

McCORMICK and HARTMAN, JJ., concur.