**Martha HADDIX, Plaintiff,**

v.

**PLAYTEX FAMILY PRODUCTS CORPORATION, Defendant.**

No. 93–2004.

United States District Court, C.D. Illinois.

March 26, 1997.

Brent D. Holmes, Teresa Keller Righter, Heller Holmes & Associates P.C., Mattoon, IL, for Plaintiff.

Todd M. Tennant, D. Cameron Dobbins, Dobbins Fraker Tennent Joy & Perstein, Champaign, IL, Richard M. Cooper, Paul Mogin, Williams & Connolly, Washington, DC, George W. Gessler, Kimberley Marsh, Donna Kaner Socol, Gessler Flynn Fleishmann Hughes & Socol, Chicago, IL, William H. Robinson, Jr., Wright robinson McCammon Osthimer & Tatum, Richmond, VA, for Defendant.

## *ORDER*

MIHM, Chief Judge.

This matter is before the Court for reconsideration of Judge Harold A. Baker's rulings on Playtex Family Products Corporation's Motion for Summary Judgment on Count V[# 50] and Playtex Family Products Corporation's Motion for Summary Judgment [# 81]. For the reasons set forth below, both Motions are GRANTED.

## PROCEDURAL INTRODUCTION

Plaintiff, Martha Haddix ("Haddix"), became ill on November 30, 1990 and sought medical attention the following day. On December 3, 1990, Haddix was hospitalized. On December 3, 1992, Haddix sued Defendant,[1] Playtex Family Products Corporation ("Playtex"), alleging that she had contracted toxic shock syndrome ("TSS") through her use of "Playtex Portables" deodorant tampons.

On July 25, 1994, Playtex filed a Motion for Partial Summary Judgment ("First Motion") as to all claims regarding their dependancy on Haddix's allegation that the warnings concerning TSS were inadequate and as to Haddix's claim for breach of an implied warranty of fitness for a particular purpose. Judge Harold A. Baker granted the First Motion on March 17, 1995.

In the meantime, on February 28, 1995, Playtex filed a Motion for Summary Judgment on Count V ("Motion on Count V") regarding breach of implied warranty of merchantability. After issuance of the March 17, 1995 Order, on March 24, 1995, Playtex filed a Supplemental Memorandum In Support and informed the Court that the March 17, 1995 Order did not address its Motion on Count V, which remained pending. On April 28, 1995, Haddix filed her opposition, to which Playtex filed a Reply on May 19, 1995. On June 8, 1995, Judge Baker issued a minute entry which stated in its entirety:

> MINUTE-ENTRY: by Judge Harold A. Baker denying motion for summary judgment on Count 5 [50–1] as the court granted partial summary judgment on March 17, 1995. All remaining issues are to be tried. (cc: all counsel)

As stated above, Judge Baker's March 17, 1995 Order had granted Playtex's First Motion regarding its alleged failure to warn and any implied warranty of fitness for a particular purpose.

On September 27, 1996, the case was reassigned to Chief Judge Michael M. Mihm. Playtex received permission to file another Motion for Summary Judgment ("Final Motion"). It states that Haddix's "only remaining claim is that Playtex is strictly liable for an alleged design defect in its tampons" in that Playtex used rayon fiber instead of all cotton fiber in the tampons. Haddix did not dispute that the Final Motion would dispose of the case. The Court denied the Final Motion as to Playtex's argument that Haddix had not filed suit within the statute of limitations. After oral argument, the Court notified the parties of its decision to grant the remainder of the Final Motion, with a written Order to follow. Haddix inquired whether the trial would proceed on schedule as to

1. Defendant K–Mart Corporation was dismissed by stipulation on March 25, 1993.

Count V. At a telephonic status conference, the Court informed the parties that it would reconsider the Motion on Count V. As the parties have been informed, the Motion on Count V is granted.

## BACKGROUND

The Code of Federal Regulations ("C.F.R.") defines a tampon as "a device that is a plug made of cellulosic or synthetic material that is inserted into the vagina and used to absorb menstrual or other vaginal discharge." 21 C.F.R. § 884.5460, 5470 (1996). The United States Food and Drug Administration ("FDA") has promulgated regulations for tampons requiring manufacturers to warn tampon-users about the reported risk of contracting TSS from tampon use. 21 C.F.R. § 801.430.

Playtex has complied with the FDA's warning requirements. (Order of March 17, 1995, Baker, J.; R & R of February 9, 1995, Kauffman, J. at 4.) A federally required warning about TSS appears in three places on Playtex's tampon boxes: on the large panel containing product information, on the end of the box which purchasers are directed to open, and on the opposite end from the end to be opened. The end of the box which is not intended to be opened is tightly glued. This warning states:

> ATTENTION: Tampons are associated with Toxic Shock Syndrome (TSS). TSS is a rare but serious disease that may cause death. Read and save the enclosed information.

(Affidavit of Dr. Irwin Butensky ("Butensky Aff.") at Exh. 3.) Another warning is set forth on a box insert, which is placed so that it is immediately seen when the box is opened. From January 1987 through and including December 1990, the insert read in red print:

> WARNING:
>
> Important
>
> Information About
>
> Toxic Shock
>
> Syndrome (TSS).

(Butensky Aff. at ¶ 5.) From January 1990 through and until December 1990, the text of the insert read:

READ BEFORE USING AND SAVE THIS INFORMATION ABOUT THESE TAMPONS:

*WARNING SIGNS:*

**WARNING SIGNS OF TSS FOR EXAMPLE ARE: SUDDEN FEVER (USUALLY 102° OR MORE) AND VOMITING, DIARRHEA, FAINTING OR NEAR FAINTING WHEN STANDING UP, DIZZINESS OR A RASH THAT LOOKS LIKE A SUNBURN.**

**IF THESE OR OTHER SIGNS OF TSS APPEAR, YOU SHOULD REMOVE THE TAMPON AT ONCE, DISCONTINUE USE, AND SEE YOUR DOCTOR IMMEDIATELY.**

There is a risk of TSS to all women using tampons during their menstrual period. TSS is a rare but serious disease that may cause death. There are scientific studies that have concluded that tampons contribute to the cause of TSS.

The reported risks are higher to women under 30 years of age and teenage girls. The incidence of TSS is estimated to be between 1 and 17 cases of TSS per 100,000 menstruating women and girls per year.

You can avoid any possible risk of getting tampon-associated TSS by not using tampons.

There are scientific studies which have concluded that higher absorbency tampons increase the risk of TSS. [Studies are described.]

Playtex tampons are available in several ranges of absorbencies: Regular Absorbency (6–9 grams); Super Absorbency (9–12 grams); and Super Plus Absorbency (12–15 grams). Each range represents the grams of fluid that can be absorbed by all manufacturers' tampons based on a standardized laboratory test. Use this information to compare the absorbencies of Playtex Tampons to other brands.

Select the minimum absorbency needed to control your menstrual flow in order to reduce the risk of getting TSS.

A scientific study has concluded that the risk of TSS is increased if you use tampons continually during your menstrual period. You can reduce risk of getting TSS during your period by alternating tampon use with sanitary napkin use.

If you have had warning signs of TSS in the past, you should check with your doctor before using tampons again. If you have any questions about TSS or tampon use, you should check with your doctor. Scientists believe that TSS requires toxin(s) produced by **Staphylococcus aureus**, a bacterium that sometimes causes infections. The majority of reported TSS cases are among tampon users.

**See Other Side for Usage Instructions**

P.O. # R0103526

PO6–97600–0–A

GCT 4/90

(Butensky Aff. at ¶ 5, Exh. B.) (Emphasis in original.)

Haddix testified at her deposition that she first learned about TSS ten years before she became ill. (Haddix dep., p. 33.) Before she became ill, she had read the box insert from the type of Playtex tampons she used, had read a magazine article about TSS, was aware of the risk of TSS associated with tampon use, and was aware that the risk was avoidable by not using tampons. *Id.* at 33, 48–50.

## DISCUSSION

A motion for summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact is one that could enable a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The movant must show an absence of a genuine issue of material fact to support the nonmovant's case. *Id.* at 255–57, 106 S.Ct. at 2514; *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law at issue in the lawsuit identifies which facts are material.

*Anderson*, 477 U.S. at 247–49, 106 S.Ct. at 2510. The nonmoving party must "go beyond the pleadings and by [her or his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (internal quotation marks omitted). The Court favors the nonmoving party and draws all justifiable inferences in its favor; however, the nonmovant may not rest on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *accord* Fed. R.Civ.P. 56(e).

### I. Playtex's Motion for Summary Judgment as to Count V

■ The warnings Playtex placed on its tampon boxes met the FDA warning requirements. (Order of March 17, 1995, Baker, J., granting the First Motion based on federal preemption and leaving undisturbed the finding in the Report and Recommendation issued by Magistrate Judge Robert J. Kauffman that Playtex's warnings meet federal requirements.) The presence of legally adequate warnings gives notice to consumers that they may encounter the risks against which they are warned. *Papike v. Tambrands Inc.*, 107 F.3d 737, 744 (9th Cir.1997); *Hornyak v. National Presto Indus.*, No. 94 C 2193, 1995 WL 239104, at *4 (N.D.Ill. Apr.21, 1995); *Nanut v. Kimberly–Clark Corp.*, No. C 92–20393, 1994 WL 570561, at *3 (N.D.Cal. Oct.7, 1994), *aff'd*, 89 F.3d 846 (9th Cir.1996). Thus, the federally mandated warnings regarding the use of tampons and the attendant risk of TSS properly inform consumers of the possibility that they will contract TSS. *Papike*, 107 F.3d at 744.

■ To recover based on a breach of a warranty of merchantability involves a showing that the goods were not "fit for the ordinary purposes for which such goods are used." 810 ILCS 5/2–314. When a product is sold with a warning as to a specific risk, the warranty of merchantability is not breached when a user of the product is harmed by that specific risk. *Koncz v. Bur-*

roughs Wellcome Co., 92 C 5797, 1994 WL 178320, at *5 (N.D.Ill. May 9, 1994); *Rohrbough v. Wyeth Laboratories. Inc.*, 719 F.Supp. 470, 478 (N.D.W.Va.1989); *Hill v. Searle Laboratories*, 686 F.Supp. 720, 726 (E.D.Ark.1988), *aff'd in part and denied in part*, 884 F.2d 1064 (in pertinent part, remanding for a determination whether the plaintiff received an adequate warning of the risk attendant to use of a product); *see Hall v. Merck, Sharp & Dohme*, 774 F.Supp. 604, 607 (D.Kan.1991); *Dunkin v. Syntex Laboratories, Inc.*, 443 F.Supp. 121, 125–26 (W.D.Tenn.1977). It is Haddix's claim that Playtex's tampons are unfit because they are capable of causing and did cause her to contract TSS. (Complaint at ¶ 12.) Playtex could not have issued an implied warranty against the risk of TSS when it was expressly warning consumers about the risk of TSS, defeating Haddix's argument before Judge Baker that Playtex did not disclaim its liability under the warranty of merchantability. Playtex cannot be held liable for breach of an implied warranty of merchantability because a consumer contracted TSS when Playtex adequately warned against that same risk—contracting TSS due to tampon use. Accordingly, the Court grants Playtex's Motion on Count V.

## II. Playtex's Final Motion for Summary Judgment

Illinois' adoption of § 402A of the Restatement (Second) of Torts directs that a plaintiff must establish that the injury resulted from the condition of the product, that the condition was unreasonably dangerous, and that the condition existed when the product left the manufacturer's control. *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1406 (7th Cir. 1994). A product may be unreasonably dangerous if there is a design or manufacturing defect or if there was a failure to warn of a danger of which the average consumer would be unaware. *Lamkin v. Towner*, 138 Ill.2d 510, 563 N.E.2d 449, 150 Ill.Dec. 562, 570 (1990). In this case, Judge Baker determined that a claim based on the adequacy of Playtex's warnings is preempted. (Order of March 17, 1995, Baker, J., at 2–3.) Indeed, there is appellate authority on point. *National Bank of Commerce v. Kimberly–Clark*

Corp., 38 F.3d 988, 990 (8th Cir.1994); *Moore v. Kimberly–Clark Corp.*, 867 F.2d 243, 247 (5th Cir.1989). This means that Haddix must show that tampons are unreasonably dangerous based on a defective design theory.

[5] The issue of whether a product is defectively designed (and therefore unreasonably dangerous) is usually for the jury to decide. *Jarke v. Jackson Prods.*, 258 Ill. App.3d 718, 631 N.E.2d 233, 238–39, 197 Ill.Dec. 230, 235–36 (1994), *appeal after remand*, 282 Ill.App.3d 292, 668 N.E.2d 46, 217 Ill.Dec. 861 (1996). A court, however, may decide the issue as a matter of law. *Kutzler v. AMF Harley–Davidson*, 194 Ill.App.3d 273, 550 N.E.2d 1236, 1238–40, 141 Ill.Dec. 190, 192–94 (1990); *Wagner v. Harley–Davidson, Inc.*, No. 95 C 2347, 1995 WL 530658, at *3 (N.D.Ill. Sept.7, 1995).

Under Illinois law, there are two tests to determine whether a product is unreasonably dangerous: the "consumer contemplation" test and the "risk-utility" test. *Todd*, 21 F.3d at 1406, 1409. The Restatement (Second) of Torts states that under the consumer contemplation test, a product is unreasonably dangerous if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* at 1406, *quoting* Restatement (Second) of Torts § 402A, cmt. I. The Illinois Supreme Court has adopted this portion verbatim. *Todd*, 21 F.3d at 1406, *quoting Lamkin*, 563 N.E.2d at 457, 150 Ill.Dec. at 570. This means that a court's focus belongs on the consumer's expectations; i.e., is it beyond the consumer's expectations to contemplate the injury? Thus, an actionable injury must derive from a distinct defect in the product that subjected the user to an unreasonable risk of harm. *Todd*, 21 F.3d at 1407. The risk-utility test originated in California for use "if through hindsight the jury determines that the product's design embodies 'excessive preventable danger,' or, in other words, if the jury finds that the risk of danger inherent in the challenged design outweighs the benefit of such design." *Todd*, 21

F.3d at 1409 *quoting Barker v. Lull Eng'g Co.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443, 454 (1978).

When a product is simple and the risk of injury is obvious, the consumer contemplation test applies. *Todd*, 21 F.3d at 1412; *Scoby v. Vulcan–Hart Corp.*, 211 Ill. App.3d 106, 569 N.E.2d 1147, 1151, 155 Ill. Dec. 536, 540 (1991). The Seventh Circuit has decided whether a product is simple or not, indicating the propriety of a court's making this determination. *Scaccianoce v. Hixon Mfg. & Supply Co.*, 57 F.3d 582, 586–87 (7th Cir.1995).

Playtex argues that a tampon is a simple product and that the reported risk of TSS is open and obvious and concludes that its tampons are not unreasonably dangerous. According to Playtex, the tampons did not perform in an unexpected manner to an ordinary consumer, and any danger was apparent or within the contemplation of an ordinary consumer. To Playtex, the presence of adequate warning means an ordinary consumer must expect exposure to the stated risks. Playtex also argues that if use of the product results in an injury covered by the warnings, the consumer may not recover for the product's failure to perform according to her expectations. Finally, Playtex contends that any argument that the warnings do not mention the fiber content harkens to a failure to warn claim, which is preempted, and not a defective design claim.

Haddix argues the tampons were defectively designed. Haddix advocates use of the risk-utility test because tampons are not simple products in that the risk—the use of synthetic rather than cotton fibers—is not obvious. According to Haddix, the warnings do not warn that the danger of TSS is significantly higher with use of tampons with synthetic fibers. Haddix argues that the risk-utility test proposes a jury question as to whether the tampons are unreasonably dangerous.

The Court will assess whether Haddix's reasonable expectations regarding her Playtex tampons were violated. As related above, Haddix knew of TSS ten years before she became ill. She was aware of the risk posed by TSS and of her ability to avoid the reported risk by not using tampons. She had read a magazine article about TSS as well as the package insert containing the TSS warning. As set forth above, the federally required warning specifies that tampon use can result in the user's contracting TSS. The Court concludes that Haddix has not demonstrated that the Playtex tampons failed to perform as she, an ordinary consumer, would expect. To the contrary, Haddix's deposition testimony demonstrates that the Playtex tampons did not perform in an unexpected manner based on the explicit warnings on the box and on the box insert.

Other courts have reached the same conclusion regarding tampons. The Northern District of California concluded in *Nanut v. Kimberly–Clark Corp.* that:

> [W]hen a product contains an adequate warning of the risks of injury, an ordinary consumer must expect to be exposed to those risks in using the product as it is intended to be used. If a Plaintiff uses the product as it is intended to be used and such use results in an injury covered by the warning, the Plaintiff may not recover on the ground that the product failed to perform as an ordinary consumer would expect.

*Nanut v. Kimberly–Clark Corp.*, No. C 92–20393 JW, 1994 WL 570561, at *3 (N.D.Cal. Oct.7, 1994), *aff'd*, 89 F.3d 846 (9th Cir.1996). Since *Nanut*, the Ninth Circuit has held that:

> [The manufacturer's] warnings met the federal requirements and [the plaintiff's] design defect claim therefore fails the "consumer expectation" test. To rule otherwise would allow the anomalous circumstance that a consumer is entitled to expect a product to perform more safely than its government-mandated warnings indicate.

*Papike*, 107 F.3d at 743.

The Court agrees. Haddix's injury was covered by the warnings Playtex provided, preventing her from a recovery for contracting TSS because of the tampons' perfor-

mance.[2] No argument has been made that an ordinary consumer might be unaware of the risk of TSS based on the warnings. Besides, Haddix concedes her knowledge of the risk TSS presents. No genuine issue of material fact exists to refute this conclusion, and, as a matter of law, Haddix may not recover.

The Court is unconvinced by Haddix's argument that Playtex could have made its tampons safer by using only cotton fibers. Whether or not Playtex can manufacture a safer tampon is not at issue. The Court notes that the C.F.R.'s definition of a tampon indicates use of cellulosic or synthetic material. Whether or not this definition is appropriate is not an issue before this Court. The Court will not find that the presence of non-cotton fibers in the tampons constitutes a distinct defect.

It is Haddix's expectations as an ordinary consumer that are at issue. The dangers associated with tampon use and TSS were well known and were known by Haddix. Haddix's knowledge of the risk of TSS was garnered, in part, by her reading the box insert warnings. Based on her knowledge, Haddix's expectations cannot be exclusive of the risk of TSS; it was not beyond her expectations to contemplate contracting TSS. The fiber content of the Playtex tampons Haddix used does not affect the outcome of this Court's decision. The warnings accompanying the tampons distinctly advised Haddix of the risk of TSS associated with her use of those tampons. An injury involving TSS was made foreseeable by the warning, and the ability to avoid the risk by not using tampons also was made clear by the warning.

Accordingly, given the stated risk of TSS associated with tampon use, given the ordinary consumer's expectation that she can avoid the risk of TSS by not using tampons, and given Haddix personal knowledge of the TSS situation, the Court concludes that the tampons are not unreasonably dangerous and grants Playtex's Final Motion.

## CONCLUSION

For the reasons set forth above, Playtex Family Products Corporation's Motion for Summary Judgment on Count V[# 50] and Playtex Family Products Corporation's Motion for Summary Judgment [# 81] are GRANTED. This case is terminated.

---

2. Haddix's deposition testimony is not determinative as to her proper use of tampons. On the one hand, Haddix changed her tampon every three to four hours, within the four- to six-hour time limit appearing on the usage instruction. (Butensky Aff. at Exh. B; Haddix dep., p. 50.) On the other hand, the box insert advises use of the lowest absorbency tampon possible to control menstrual flow. (Butensky Aff. at Exh. B.) Haddix testified that she "mainly" and "almost always" used Super Absorbency tampons throughout her menstrual cycle and began using a tampon when she started to spot. (Haddix dep., pp. 50, 56.)